**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| WHITEWATER, INC.,<br><br>Plaintiff,<br><br>v.<br><br>JONES LANG LaSALLE AMERICAS, INC.,<br><br>Defendant. | Civ. No.: 4:26-cv-40015-MRG |

<u>**ORDER ON DEFENDANT'S PARTIAL MOTION TO DISMISS [ECF No. 9]**</u>

**GUZMAN, J.**

Plaintiff WhiteWater Inc. ("Plaintiff" or "WhiteWater") brings this suit against Defendant Jones Lang LaSalle Americas, Inc. ("Defendant" or "JLL") for claims of breach of contract and violations of Mass. Gen. Law ch. 93A, § 11 ("Chapter 93A, §11"), alleging that WhiteWater's contract was improperly terminated after it made legally-obligated disclosures to the Massachusetts Department of Environmental Protection ("MassDEP") and the Town of North Reading, Massachusetts. [See Compl., ECF No. 1-1].

Before the Court is Defendant's Partial Motion to Dismiss Count III, the claim for violations of Chapter 93A, §11. [ECF No. 9]. For the reasons that follow, the Motion to Dismiss is **DENIED**.

### I.   BACKGROUND

The following relevant facts are taken primarily from the allegations in Plaintiff's Complaint, [Compl.], and are accepted as true for purposes of this motion. Ruivo v. Wells Fargo Bank, N.A., 766 F.3d 87, 90 (1st Cir. 2014) (explaining that a reviewing court "must separate the

1

complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited)"). All plausible inferences are made in Plaintiff's favor. Id.

### A. Relevant Facts

Plaintiff WhiteWater has been in the water and wastewater industry for over four decades and its employees have active memberships to many professional associations. [Compl. ¶ 3]. Plaintiff acted as a licensed operator responsible for operations and maintenance at the wastewater treatment facility located at the United States Postal Service ("USPS") Middlesex Processing and Distribution Center ("USPS Facility") for over a decade prior to the termination of its contract in June 2025. [Compl. ¶¶ 2, 4, 24].

In September 2024, WhiteWater and JLL entered into a Service Contractor Agreement ("Service Contract") whereby WhiteWater agreed to perform certain repair work and wastewater treatment options at the USPS Property as a subcontractor of JLL. [Id. ¶ 5]. Plaintiff asserts that within a month of executing the Service Contract, JLL began a pattern of failing to timely authorize critical time-sensitive work and to timely pay WhiteWater's invoices for work performed. [Id. ¶ 7]. Due to JLL's lack of efficacy, WhiteWater reached out to USPS directly to address maintenance and repair concerns at the facility. [Id. ¶¶ 8–12].

On August 5, 2025, WhiteWater messaged JLL about a developing emergency at the USPS Facility which had a high risk of resulting in sanitary sewage overflow. [Id. ¶¶ 13–15]. WhiteWater followed up on the message to JLL and received no reply to either message. [Id. ¶¶ 15–16]. The pump at the facility overflowed with sanitary sewage, which WhiteWater reported to MassDEP and the Town of North Reading. [Id. ¶¶ 17–19, 21]. In response to WhiteWater's report, JLL and USPS directed the operator to stop communicating with MassDEP and the Town of North Reading.

2

[Id. ¶ 20]. Not deterred by the message from JLL and USPS, on August 14, 2025, WhiteWater believed it had a legal obligation to report to regulators and provided formal notice to MassDEP and the Town of North Reading regarding the sanitary sewage overflow event. [Id. ¶ 22]. The next day, JLL terminated WhiteWater's contract "for cause" citing the operator's communication with MassDEP and the Town. [Id. ¶ 24]. At the time of termination, JLL owed "significant sums" for work performed by WhiteWater under the Service Contract. [Id. ¶ 25].

### B. Procedural History

Plaintiff filed its complaint in Worcester Superior Court in December 2025. [Compl.] Defendant removed the action to federal court on January 26, 2026, on grounds of diversity jurisdiction. [ECF No. 1]. In February 2026, Defendant filed a partial motion to dismiss as to Count III only, and the Plaintiff timely opposed the motion. [ECF Nos. 9, 12]. The Court granted a reply brief which was filed on March 16, 2026. [ECF No. 16]. On April 27, 2026, the Court heard oral argument on the partial motion to dismiss as to Count III. [ECF No. 20].

### II. LEGAL STANDARDS

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). On a motion to dismiss made pursuant to Rule 12(b)(6), the factual allegations in the complaint are accepted as true, and the Court draws "all reasonable inferences in favor of the plaintiff." Trans-Spec Truck Serv., Inc. v. Caterpillar Inc., 524 F.3d 315, 320 (1st Cir. 2008) (citing Garita Hotel Ltd. P'ship v. Ponce Fed. Bank, F.S.B., 958 F.2d 15, 17 (1st Cir. 1992)). The plausibility standard does not impose a probability requirement; it requires only enough facts to allow the Court to reasonably infer liability. Iqbal, 556 U.S. at 678; Twombly, 550 U.S. at 556.

Bare allegations and legal conclusions and/or a "formulaic recitation of the elements of a cause of action" will not suffice. Twombly, 550 U.S. at 555. Although a complaint "does not need detailed factual allegations, a plaintiff's obligations to provide the grounds of [their] entitlement to relief requires more than labels and conclusions." Id. (internal quotations omitted).

### III.   DISCUSSION

The Defendant brings a partial motion to dismiss contesting the single count under the Massachusetts Consumer Protection Act, Chapter 93A, § 11. [See ECF Nos. 9, 10]. Defendant asserts that this is a simple breach of contract claim, and the facts alleged in the Complaint fail to rise to the level of "unfair" and "deceptive acts and practices" intended to be protected by Chapter 93A. [See ECF No. 10 at 1–2].  After careful consideration of the Plaintiff's Complaint and oral argument on the issue, the Court disagrees. [Compl.; ECF No. 21].

Under Massachusetts law, a breach-of-contract claim requires the plaintiff to show: (1) the existence of an agreement supported by consideration; (2) the plaintiff's performance; (3) the defendant's breach; and (4) resulting damages. Unum Grp. v. Benefit P'ship, Inc., 938 F. Supp. 2d 177, 185 (D. Mass. 2013). In Massachusetts, the covenant of good faith and fair dealing is implied in every contract. Kerrigan v. Boston, 278 N.E.2d 387, 393 (Mass. 1972), quoting Clark v. State St. Trust Co., 169 N.E. 897, 903 (Mass. 1930). The covenant ensures, "'that neither party interferes with the ability of the other to enjoy the fruits of the contract' and that 'when performing the obligations of the contract, the parties remain faithful to the intended and agreed expectations of the contract.'" FAMM Steel, Inc. v. Sovereign Bank, 571 F.3d 93, 100 (1st Cir. 2009) (quoting Chokel v. Genzyme Corp., 867 N.E.2d 325, 329 (2007)).

Chapter 93A liability attaches when the facts "illustrate something beyond a mere good faith dispute, failure to pay, or simple breach of contract." Woods v. Wells Fargo Bank, N.A., 733 F.3d 349, 358 (1st Cir. 2013). Specifically, Chapter 93A, § 11 states that:

> Any person who engages in the conduct of any trade or commerce and who suffers any loss of money or property, real or personal, as a result of the use or employment by another person who engages in any trade or commerce of an unfair method of competition or an unfair or deceptive act or practice declared unlawful.

Mass. Gen. Laws Ann. ch. 93A, § 11 (West).

A simple breach of contract claim is insufficient to prevail on a claim of a violation of Chapter 93A. Putluri v. FSSI Acquisition, Inc., 637 F. Supp. 3d 1, 7 (D. Mass. 2022). A plaintiff with a Chapter 93A claim "must demonstrate an unfair or deceptive practice that falls within at least the penumbra of some common-law, statutory, or other established concept of unfairness.'" Am. Paper Recycling Corp. v. IHC Corp., 775 F. Supp. 2d 322, 332 (D. Mass. 2011) (Lambert v. Fleet Nat'l Bank, 865 N.E.2d 1091, 1097 (Mass. 2007). Such unfair or deceptive conduct is "best discerned 'from the circumstances of each case.'" Kattar v. Demoulas, 739 N.E.2d 246, 257 (Mass. 2000) (quoting Commonwealth v. DeCotis, 316 N.E. 2d 748, 754 (Mass. 1974)). Corporate plaintiffs "face[] 'a stricter standard than consumers in terms of what constitutes unfair or deceptive conduct.'" Id. The alleged unfair practices "must reach a level of rascality that would raise an eyebrow of someone inured to the rough and tumble of the world of commerce and be unscrupulous, intolerable, and unethical." Henry v. Nat'l Geographic Soc'y, 147 F. Supp. 2d 16, 21 (D. Mass. 2001) (citations and internal quotations omitted).

In Massachusetts, a breach of implied covenant of good faith and fair dealing may constitute an unfair or deceptive act or practice because a breach "clearly falls within established common law . . . concept[s] of unfairness." Speakman v. Allmerica Fin. Life Ins., 367 F. Supp. 2d 122, 140 (D. Mass. 2005) (internal citations omitted). Conduct motivated by retribution has also

5

been found actionable under Chapter 93A, § 11. See Kattar, 739 N.E. 2d at 257 (holding that a mortgager's lawful foreclosure motivated by retributive animus qualified as actionable conduct under Chapter 93A, §11); Janz Corp. v. Philips North America LLC, 793 F.Supp.3d 380, 392 (D. Mass. 2025) (holding that the determination whether a contract was terminated in good faith or in retaliation in violation of Chapter 93A, §11 must be determined by a fact-finder).

Here, the issue before the Court is whether there are sufficient facts alleged in the Complaint to support Plaintiff's theory that the termination of WhiteWater's contract was a form of retribution for reporting the sewage event. [ECF No. 1-1 ¶ 24; see ECF No. 12 at 4–9]. Plaintiff complains that Defendant acted in violation of Chapter 93A, § 11, "through its unfair or deceptive conduct . . . including without limitation its breach of the implied covenant of good faith and fair dealing and pretextual and improper purported termination of the Services Agreement 'for cause.'" [ECF No. 1-1 at 2, 8].

WhiteWater asserts that their contract was terminated after it made legally obligated disclosures to the MassDEP and the Town of Reading due to JLL's inaction and the resulting sewage overflow into waterways. [Compl. ¶¶ 19–24].[1] JLL filed a motion to dismiss the single count for the Chapter 93A claim, claiming that Plaintiff failed to plead sufficient facts to support their Chapter 93A claim. Defendant argues that the facts asserted only support the breach of the

---

[1] The regulation cited by both parties in their briefings is 314 CMR 12.03, which states in relevant part, that an owner or operator shall notify the MassDEP "[i]n the event of an anticipated bypass or sanitary sewer overflow." 314 CMR 12.03(8)(a). At oral argument, the parties' arguments focused on the reporting requirements of an "owner" or "operator," whether WhiteWater may be properly considered an "operator" for the USPS facility, and whether the term "or" would relieve WhiteWater of its legal obligations to report. [ECF No. 21]. The proper classification of WhiteWater's role, and the expectations of an "owner" versus an "operator" are beyond the Court's consideration at a Motion to Dismiss. In WhiteWater's complaint, it identifies itself as the "operator" with the legal obligation to report to MassDEP; at the pleading stage, those allegations must be accepted as true. The parties may re-introduce these arguments at summary judgment.

implied covenant of good faith and fair dealing alleged in the breach of contract claim. [See ECF No. 10 at 2 ("Presumably, Plaintiff's Chapter 93A claim is premised on JLL's failure and refusal to pay monies due to Plaintiff and upon the purported failure to comply with the termination provision of the Service Contract."). These arguments fail to address Plaintiff's theory of coercive and retributive business conduct.

Although the complaint does not explicitly allege any retaliation or retribution theory in Count III, Plaintiff provides a clear timeline of events and sufficient information to support an inference of retaliation: (1) Plaintiff acknowledges a potential emergency and contacts JLL to address the issue, [Compl. ¶¶ 13, 15]; (2) Defendant failed to respond to Plaintiff's notifications and the overflow occurs, [id. ¶¶ 14, 16]; (3) Plaintiff reports the overflow to MassDEP, [id. ¶¶ 18, 19, 21]; (3) JLL and USPS issue a directive to WhiteWater to cease communication with regulatory authorities, [id. ¶ 20]; (4) Plaintiff continues contact with the regulatory authorities and is terminated the next day "for cause," where Defendant cites this communication as the reason for termination, [id. ¶¶ 22, 24].

At the motion to dismiss stage, the factual allegations in the complaint are accepted as true, and the Court draws "all reasonable inferences in favor of the plaintiff." Trans-Spec Truck Serv., 524 F.3d at 320 (citing Garita Hotel Ltd. P'ship, 958 F.2d at 17). The combination of the temporal proximity between the report to MassDEP and the termination of the contract, in addition to the assertion that the "for cause" notice of the contract termination cited Whitewater's communication to MassDEP and the Town as the reason for termination, is sufficient to provide this Court with the inference of retributive animus in the contract termination. Therefore, it is plausible that Defendant retaliated against a licensed operator for complying with environmental reporting laws, which constitutes unfair, retributive business conduct in violation of Chapter 93A, § 11.

## IV.    <u>CONCLUSION</u>

For the reasons stated above, the Partial Motion to Dismiss, ECF No. 9, is **<u>DENIED.</u>**


**SO ORDERED.**



Dated: May 28, 2026

        /s/ Margaret R. Guzman
Margaret R. Guzman
United States District Judge